UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 4:21CR00036-9 KGB |
| | ) | |
| KAREN HOSKINS | ) | |

**UNITED STATES' SENTENCING MEMORANDUM**

The United States of America, by and through Jonathan D. Ross, United States Attorney for the Eastern District of Arkansas, Anne E. Gardner, Assistant United States Attorney for said district, hereby submits the following in support of the United States' sentencing recommendation:

**Background**

On February 3, 2021, the Grand Jury for the Eastern District of Arkansas returned an indictment charging Brian Jeffrey Litton (LITTON) and eight others with conspiracy to distribute methamphetamine, as well as other charges. LITTON is the son of the defendant, Karen Hoskins (HOSKINS). Following his initial indictment on March 1, 2021, LITTON was released to home detention with electronic monitoring. LITTON's bond conditions required that he reside in the Eastern District of Arkansas, that he comply with drug testing and treatment requirements, and that he maintain regular contact with his United States Probation Officer and his defense attorney.

In May 2021, LITTON failed to report as instructed to the United States Probation Office for drug screening. Thereafter, LITTON failed to report to his United States Probation Officer and his whereabouts became unknown. LITTON also failed to maintain contact with his defense counsel. On May 7, 2021, LITTON was declared a fugitive, and a warrant was issued for his arrest.

After May 7, 2021, HOSKINS contacted the United States Probation Office and returned LITTON's electronic monitoring equipment. HOSKINS represented that LITTON removed the

1

monitoring equipment and was missing. HOSKINS denied knowing LITTON's location or what had happened to LITTON.

In August 2021, LITTON was located living in a wooded area of Pulaski County. HOSKINS was observed meeting with LITTON in this remote location. Evidence in the case revealed that HOSKINS knew LITTON's whereabouts at the time she told the United States Probation Office that LITTON was missing, and that HOSKINS made false statements to United States Probation Officers in order to conceal LITTON.

On October 6, 2021, a Superseding Indictment was returned charging HOSKINS with harboring a fugitive in violation of Title 18, United States Code, Section 1071. On July 6, 2022, a Second Superseding Indictment was returned charging HOSKINS with conspiracy to money launder, as well as five counts of money laundering in connection with LITTON's drug trafficking activity. On August 14, 2023, HOSKINS entered a guilty plea to one count of money laundering, a violation of Title 18, United States Code, Section 1957.

**Statements against HOSKINS**

During post-Miranda interviews, LITTON provided statements implicating HOSKINS in his drug trafficking conspiracy. These statements were corroborated by co-defendants in the case, as well as evidence from law enforcement investigation.

LITTON admitted to Drug Enforcement Administration investigators that he had been involved in trafficking methamphetamine since 2005, and that his mother, HOSKINS, was aware of his drug trafficking activity. LITTON was convicted of methamphetamine trafficking in 2007 and sentenced to 126 months in the Bureau of Prisons. LITTON was released in or about 2017, and in 2019, he returned to drug trafficking. In January 2020, LITTON was arrested in Sherwood, Arkansas during a traffic stop for possession of MDMA. Following the traffic stop, law

enforcement received information from a cooperating individual that during the arrest, LITTON requested that officers release his truck from the traffic stop and allow HOSKINS to drive it to his residence (105 Bob O Link Lane, Sherwood, AR). LITTON asked his mother, HOSKINS, to drive his truck from the traffic stop to his residence, because the arresting officers had missed approximately 5,000 dosage units of MDMA hidden in the dash of LITTON's truck, and so HOSKINS could remove $30,000 in U.S. Currency from his residence to avoid the money being seized by law enforcement.

Co-defendant NELSON-FLANAGAN provided information and was available to testify that when she supplied methamphetamine to LITTON in 2020 and 2021, he would need to know the time when the deliveries were coming, so that he could get with his mom (HOSKINS) to acquire money to pay for the methamphetamine. NELSON-FLANAGAN stated that HOSKINS did all of LITTON's financial transactions, and that anytime LITTON was in trouble with the police, HOSKINS would travel to LITTON's residence and clear the property and vehicles of any illegal narcotics and US Currency. This information was separately confirmed by co-defendant Brandi MEYERS who advised that LITTON's mother, HOSKINS, was involved in LITTON's methamphetamine operation. According to MEYERS, HOSKINS was aware of LITTON's drug dealing and would monitor LITTON's camera system from her house to alert LITTON of law enforcement presence.

As part of his cooperation in the case LITTON was prepared to testify at trial that he made small cash deposits into his own bank accounts that was money he made from side jobs. Other than the small amounts from these jobs, the remainder of the funds deposited, specifically to his Eagle Bank and Trust (EB&T) account, was generated from drug activity. LITTON handed $2,000 to $5,000 in cash to HOSKINS on a weekly basis that were drug proceeds. The cash was given to

HOSKINS at her house and was bound in rubber bands. LITTON took the cash to HOSKINS at her house because he knew that storing it at his house could make it available for seizure by law enforcement authorities. LITTON stated that HOSKINS was against him being involved in drug activity, but she knew that it was the source of the cash he gave to her on a weekly basis to hold for him and to use on his behalf. HOSKINS kept the cash he gave to her in a box at her home. He would call her in advance to let HOSKINS know how much he needed to meet his obligations. LITTON would travel to HOSKINS' home to pick up the cash as needed regardless of the reason he needed the money. HOSKINS would personally hand him the cash. HOSKINS paid all of his bills using the drug proceeds that he provided to her. He was aware that HOSKINS deposited his cash into accounts in 2020 and 2021, which she knew represented drug proceeds, to pay several bills he incurred and owed. HOSKINS allowed LITTON to use her American Express credit card to charge items, including parts for his Corvette that he was rebuilding, and HOSKINS paid the credit card balance using drug proceeds. Although he never gave HOSKINS any cash to use at casinos, he believes that some of the cash HOSKINS used for gambling included drug proceeds he gave her to hold for him. In 2021, LITTON closed his EB&T account to prevent the "Feds" from seizing approximately $18,000. HOSKINS endorsed the closeout check from EB&T, which she knew represented drug proceeds, and deposited the funds into a joint Regions Bank account that reflected LITTON's and HOSKINS' names. Prior to his arrest in February 2021, LITTON presented $75,000 in cash drug proceeds as a down payment to a real estate company. In March 2021, LITTON received a check for $74,700 from a real estate company that represented a refund of funds that were placed into escrow on his behalf. The difference in the two amounts was because fees were deducted from the original amount paid. While LITTON was incarcerated in March

2021, HOSKINS endorsed the refund check, knowing it represented drug proceeds, and deposited the check into a Regions Bank account in the names of Brian LITTON and Karen HOSKINS.

As part of her guilty plea, HOSKINS admitted that she was recorded on a Title III interception talking to LITTON about LITTON bringing cash proceeds of his drug trafficking to her residence for her to hold. On the call, HOSKINS acknowledged that she would "take care" of the cash for LITTON. HOSKINS acknowledged that she was aware of the illegal source of LITTON's money, which was drug trafficking.

**Financial Investigation**

The United States will offer proof at sentencing of HOSKINS' financial transactions and the extent of her benefit from laundering drug proceeds for LITTON. Drug Enforcement Administration financial analyst Charles Pittman is expected to testify to the substance of the following spreadsheets:

<u>Exhibit 1: Cash Deposits into Bank Accounts of Karen Hoskins and Brian Litton</u>

This spreadsheet shows cash deposits made by HOSKINS into accounts held by HOSKINS or HOSKINS and LITTON jointly. The accounts are listed on page 2 of the spreadsheet. In total, HOSKINS deposited cash into bank accounts in the amounts of $74,613 in 2020 and $118,904 in 2021.

<u>Exhibit 2: Possible Legitimate Sources of Cash Deposits to Accounts</u>

This spreadsheet analyzes possible legitimate sources of cash deposits, i.e., cash other than that from LITTON's drug trafficking activity. The analysis shows a possible total of $3,700 from casino winnings in 2020 that could have been legitimate cash deposits, and possible legitimate transfers or re-deposits of $14,378 in cash in 2021.

Therefore, at a minimum, illegitimate cash totaled $70,913 in 2020 and $104,526 in 2021.

Exhibit 3: Amounts Withdrawn from AFCU and Regions Bank Accounts for Casino Use by Karen Hoskins

This spreadsheet shows direct debits and e-checks by various casinos from accounts held by HOSKINS in 2020 and 2021. Debits from HOSKINS accounts by casinos totaled $77,999 in 2020 and $73,024 in 2021, for a total of $152,023.

**Guideline Range and Sentencing Recommendation**

The recommended Guidelines range is 33-41 months imprisonment. The United States requests a sentence within the applicable Guidelines range. The United States submits that HOSKINS' conduct outweighs mitigating factors, such as her age, in sentencing. Under Guidelines Section 5H1.1, HOSKINS is neither elderly nor infirm, and her age does not present an unusual characteristic that supports a downward variance from the Guidelines range. *See, United States v. Johnson*, 619 F.3d 910, 922 (8th Cir. 2010).

Similarly, the United States submits that due to the ongoing nature of HOSKINS' conduct, it does not qualify as aberrant behavior under Guidelines Section 5K2.20. To qualify for a downward departure due to aberrant behavior under Section 5K2.20, the offense must have been a single criminal occurrence or transaction that was committed without significant planning, was of limited duration, and represented a marked deviation by the defendant from an otherwise law-abiding life. U.S.S.G. § 5K2.20, cmt. n. 1. The offense must have been more than something out of the defendant's character; it must have been a spontaneous and thoughtless act. *See, United States v. Bueno*, 443 F.3d 1017, 1023 (8th Cir. 2006)(citing, *United States v. Weise,* 89 F.3d 502, 507 (8th Cir.1996))(finding the court's application of Section 5K2.20 to be an abuse of discretion). Although HOSKINS pleaded guilty to one count of money laundering, relevant conduct in the case shows an ongoing pattern of money laundering, promotion of the drug conspiracy, and

concealment of further crimes by LITTON. The conduct on April 8, 2021, was not an isolated event, thoughtless act, or a marked deviation from otherwise law-abiding conduct of HOSKINS.

The United States submits that a downward variance should not be awarded in this case, due to the nature and extent of the defendant's involvement in the drug trafficking conspiracy. HOSKINS was aware that LITTON was involved in the distribution of methamphetamine as far back as 2005. HOSKINS, by her actions, assisted LITTON's methamphetamine distribution in 2020 and actively participated in the ongoing conspiracy. Co-conspirators were aware that HOSKINS was helping LITTON conceal drug proceeds, and HOSKINS used drug proceeds to pay LITTON's bills and to acquire assets. In addition, HOSKINS benefited from LITTON's drug trafficking by using cash proceeds to support her gambling habit in 2020 and 2021 in an amount in excess of $150,000. Her participation in the ongoing drug conspiracy was anything but minimal, and she profited from the illegal enterprise and took advantage of her son's position as a drug dealer. After his initial incarceration in February 2021, HOSKINS knowingly helped LITTON move funds from various accounts in an attempt to hide drug proceeds from law enforcement. Finally, in the spring and summer of 2021, HOSKINS knew that LITTON absconded from pre-trial release, and she took affirmative steps to conceal LITTON, to aid LITTON, and to deceive the United States Probation Office.

WHEREFORE, the United States respectfully requests a sentence within the recommended Guidelines range of 33-41 months imprisonment.

Respectfully submitted,

JONATHAN D. ROSS
United States Attorney for the Eastern District of Arkansas

By: ANNE E. GARDNER
Assistant U.S. Attorney

                                            Bar No. 2023055  
                                            P.O. Box 1229  
                                            Little Rock, AR 72203  
                                            (501) 340-2600  
                                            Anne.Gardner2@usdoj.gov